## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TMT USA SHIPMANAGEMENT LLC, *et al.*,[1] | § | Case No. 13-33740 |
| | § | |
| | § | |
| DEBTORS. | § | (Joint Administration Requested) |

| | | |
|---|---|---|
| C WHALE CORP., | § | |
| E WHALE CORPORATION, | § | |
| F ELEPHANT CORPORATION, | § | |
| F ELEPHANT INC., | § | |
| B HANDY CORPORATION, | § | |
| C HANDY CORPORATION, | § | |
| C LADYBUG CORPORATION, AND | § | |
| A DUCKLING CORPORATION | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Adversary No. 13-3141 |
| | § | |
| ACTIVE TANKERS SHIPMANAGEMENT | § | |
| S.A.; ALSTOM, INC.; BHP BILLITON | § | |
| MARKETING A.G.; CATHAY UNITED | § | |
| BANK; CHANG HWA BANK, LTD.; HUA | § | |
| NAN COMMERCIAL BANK, LTD.; KPI | § | |
| BRIDGE OIL LIMITED; MEGA | § | |
| INTERNATIONAL COMMERCIAL | § | |
| BANK CO., LTD.; SHANGHAI | § | |
| COMMERCIAL & SAVINGS BANK; SDV | § | |
| GEIS GMBH; XIAMEN HAILONG | § | |
| MANNING SERVICE CO., LTD.; | § | |
| ZHEJIANG EASTERN SHIPYARD CO., | § | |
| LTD. | § | |
| Defendants. | § | |

## AMENDED COMPLAINT TO COMPEL TURNOVER AND FOR

---

[1]  The Debtors in these chapter 11 cases are: (1) A Whale Corporation; (2) B Whale Corporation; (3) C Whale Corporation; (4) D Whale Corporation; (5) E Whale Corporation; (6) G Whale Corporation; (7) H Whale Corporation; (8) A Duckling Corporation; (9) F Elephant Corporation; (10) F Elephant Inc.; (11) A Ladybug Corporation; (12) C Ladybug Corporation; (13) D Ladybug Corporation; (14) A Handy Corporation; (15) B Handy Corporation; (16) C Handy Corporation; (17) B Max Corporation; (18) New Flagship Investment Co., Ltd; (19) RoRo Line Corporation; (20) Ugly Duckling Holding Corporation; (21) Great Elephant Corporation; (22) TMT Procurement Corporation; and (23) TMT USA Shipmanagement LLC.

**TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

C Whale Corporation, E Whale Corporation, F Elephant Inc., F Elephant Corporation, B Handy Corporation, C Handy Corporation, C Ladybug Corporation, and A Duckling Corporation, debtors and debtors in possession in the above-captioned cases (together, the "Plaintiffs"), by and through their proposed attorneys, Bracewell & Giuliani LLP, hereby file this Amended Complaint to Compel Turnover and for Temporary and Permanent Injunctive Relief ("Complaint"). In support of such Complaint, the Debtors allege as follows:

**I.  NATURE OF THE ACTION**

1.      Plaintiffs bring this action to recover the following property of the estate: (i) the *M/V C Whale* ("C Whale"); (ii) the *M/V E Whale* (the "E Whale"); (iii) the *M/V Fortune Elephant* (the "Fortune Elephant"); (iv) the *M/V F Elephant* (the "F Elephant"); (v) the *M/V B Handy* (the "B Handy"); (vi) the *M/V C Handy* (the "C Handy"); (vii) the *M/V C Ladybug* (the "C Ladybug"); and (viii) the *M/V A Duckling* (the "A Duckling") (collectively, the *C Whale*, *E Whale*, *Fortune Elephant*, *F Elephant*, *B Handy*, *C Handy*, *C Ladybug*, and *A Duckling* shall be referred to herein as the "Arrested Vessels"), all of which have been arrested by various Defendants at ports around the world as described further below.

2.      Plaintiffs seek (i) issuance of a temporary restraining order pursuant to §§ 105 and 362(a)(3), without notice or hearing, immediately restraining Defendants from retaining and/or obtaining possession of property of the estate or exercising control over property of the estate, including without limitation the Arrested Vessels; (ii) a permanent injunction restraining Defendants from retaining and/or obtaining possession of property of the estate or exercising control over property of the estate without Court order; (iii) a determination by this Court that Defendants (a) must turn over the Arrested Vessels pursuant to § 542(a) and/or § 543(b); and (b)

are in violation of the automatic stay by exercising control over and refusing to return the Arrested Vessels; (iv) damages for Defendants' violation of the automatic stay and as otherwise deemed appropriate by the Court; and (v) Plaintiffs' reasonable and necessary attorneys' fees and costs of suit.

## II.  THE PARTIES

### The Plaintiffs

3.     The Plaintiffs are individual ship owning companies that generate revenue by employing their vessels on time charters as well as in the spot market.  The "Whale" and "Elephant" vessels are often chartered out to an affiliated non-debtor, Blue Whale Corporation, under bareboat charters.  The Plaintiffs, along with other affiliated entities, filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") on June 20, 2013 (the "Petition Date").  The Plaintiffs continue to operate their business and manage their property as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. [2]

4.     Plaintiff C Whale Corporation is registered in Liberia and is the owner of the *C Whale* vessel.

5.     Plaintiff E Whale Corporation is registered in Liberia and is the owner of the *E Whale* vessel.

6.     Plaintiff F Elephant Corporation is registered in the Marshall Islands and is the owner of the *F Elephant* vessel.

---

[2] Additional information regarding Plaintiffs, their affiliated debtors, and the circumstances leading up to the Petition Date is available in the Declaration of Lisa Donahue in Support of Debtors' Chapter 11 Petitions and First Day Pleadings.

#4314197

7.      Plaintiff F Elephant Inc. is registered in the Marshall Islands and is the owner of the *Fortune Elephant* vessel.

8.      Plaintiff B Handy Corporation is registered in the Marshall Islands and is the owner of the *B Handy* vessel.

9.      Plaintiff C Handy Corporation is registered in the Marshall Islands and is the owner of the *C Handy* vessel.

10.     Plaintiff C Ladybug Corporation is registered in Panama and is the owner of the *C Ladybug* vessel.

11.     Plaintiff A Duckling Corporation is registered in Panama and is the owner of the *A Duckling* vessel.

**The Defendants**

12.     Defendant Active Tankers Shipmanagement S.A. ("Active Tanker") is a shipping management company organized under the laws of the Marshall Islands and doing business globally that is a subsidiary of Capital Ship Management, a New York based company, and may be served with process by mailing a copy of the summons and Complaint to the attention of Capital Ship Management's registered agent for service of process, the CT Corporation System, at CT Corporation System, 111 Eighth Avenue, New York, NY 10011, via United States first class mail, postage prepaid.

13.     Defendant Alstom, Inc. ("Alstom") is a rolling stock, transport infrastructure, maintenance equipment and global rail system supplier organized under the laws of France, doing business globally and may be served with process by mailing a copy of the summons and Complaint to the attention of Alstom's registered agent for service of process, the Corporation

#4314197

Trust Company, at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, via United States first class mail, postage prepaid.

14.     Defendant BHP Billiton Marketing A.G. ("BHP") is a diversified resources company and supplier of materials organized under the laws of Switzerland, doing business globally and may be served with process by mailing a copy of the summons and Complaint to the attention of the registered agent for service of process of BHP's subsidiary, BHP Billiton Marketing Inc., the CT Corporation System, at CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201-4234, via United States first class mail, postage prepaid.

15.     Defendant Cathay United Bank ("Cathay") is a banking institution organized under the laws of the Republic of China doing business globally and may be served with process by mailing a copy of the summons and Complaint to the attention of Cathay's registered agent for service of process, Allen YL Peng, at 725 S. Figueroa St., Ste. 4150, Los Angeles, CA 90017, via United States first class mail, postage prepaid.

16.     Defendant Chang Hwa Bank, Ltd. ("Chang Hwa") is a banking institution organized under the laws of Taiwan, Republic of China, doing business globally and may be served with process by mailing a copy of the summons and Complaint to Chang Hwa Bank, Ltd., 685 Third Avenue, 29th Floor, New York, NY 10017-4024, via United States first class mail, postage prepaid.

17.     Defendant Hua Nan Commercial Bank, Ltd. ("Hua Nan") is a banking institution organized under the laws of Taiwan, Republic of China, doing business globally and may be served with process by mailing a copy of the summons and Complaint to Hua Nan Commercial Bank, Ltd., 330 Madison Avenue, 38th Floor, New York, NY 10017, via United States first class mail, postage prepaid.

#4314197

18.     Defendant KPI Bridge Oil Limited ("KPI") is a ship bunkering company incorporated under the laws of the Cayman Islands doing business globally and may be served with process by mailing a copy of the summons and Complaint to the attention of KPI's registered agent for service of process, Tamara Anderson, at 720 3rd Ave., Ste. 1615, Seattle, WA 98104, via United States first class mail, postage prepaid.

19.     Defendant Mega International Commercial Bank Co., Ltd. ("Mega") is a banking institution organized under the laws of Taiwan, Republic of China, doing business globally and may be served with process by mailing a copy of the summons and Complaint to the attention of Mega's registered agent for service of process, Kuang-Si Shiu, at 445 S. Figueroa St., Ste. 1900, Los Angeles, CA 90017, via United States first class mail, postage prepaid.

20.     Defendant SDV Geis GMBH ("SDV") is a supply chain management company organized under the laws of France, doing business globally and may be served with process by mailing a copy of the summons and Complaint to the attention of SDV's registered agent for service of process, National Registered Agents, Inc., at 111 Eighth Ave., New York, NY 10011, via United States first class mail, postage prepaid.

21.     Defendant Shanghai Commercial & Savings Bank ("Shanghai") is a banking institution organized under the laws of the Republic of China, Taiwan, doing business globally and as agent for Chang Hwa and Hua Nan, and may be served with process by mailing a copy of the summons and Complaint to Chang Hwa and Hua Nan at their addresses listed above via United States first class mail, postage prepaid.

22.     Defendant Xiamen Hailong Manning Service Co., Ltd. ("Xiamen") is a crewing and manning agency organized under the laws of the Republic of China and, upon information and belief, may be served with process by mailing a copy of the summons and Complaint to

-6-

Xiamen Hailong Manning Service Co., Ltd., The Atlantic Seaview Building A, Floor 13 No. 9, Hubin West Road, Xiamen 361003, Fujian, China, via United States first class mail, postage prepaid.

23.     Defendant Zhejiang Eastern Shipyard Co., Ltd. ("<u>ZESCO</u>") is a ship repair yard organized under the laws of the Republic of China and, upon information and belief, may be served with process by mailing a copy of the summons and Complaint to Zhejiang Eastern Shipyard Co., Ltd., Head Office Shipyard, Chaotoumen, Qushan, Daishan, Zhousan, Zhejiang 316281, China, via United States first class mail, postage prepaid.

### III.  JURISDICTION AND VENUE

24.     This adversary proceeding is commenced pursuant to 11 U.S.C. §§ 105, 362, 542(a) and 543 and Federal Rules of Bankruptcy Procedure 7001 and 7065.

25.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (2)(A), and (2)(E) and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because the chapter 11 cases this adversary proceeding relates to is pending in this district.

26.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O)  In accordance with Local Rule 7008-1, the Plaintiffs do consent to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

### IV.  BACKGROUND FACTS

27.     Prior to, or concurrent with, the Petition Date, the Arrested Vessels were seized as follows: (i) the *C Whale*, a 319,869 dead weight ton (dwt) ore/oil vessel, registered under the Liberian flag and bearing IMO number 9437177, was arrested by KPI Bridge Oil Limited and

#4314197

Mega International Commercial Bank Co., Ltd. at the Port of Singapore by the Admiralty Marshal of the High Court of the Republic of Singapore; (ii) the *E Whale*, a 319,869 dwt ore/oil vessel, registered under the Liberian flag and bearing IMO number 9445461, was arrested by Mega International Commercial Bank Co., Ltd. and crew individuals at the Port of Cape Town by the Admiralty Marshal of the High Court of South Africa, Western Cape High Court, Cape Town; (iii) the *Fortune Elephant*, a 318,000 dwt ore vessel, registered under the Marshall Islands flag and bearing L.R. number 9424273, was arrested by Cathay United Bank at the Port of Singapore by the Admiralty Marshall of the High Court of the Republic of Singapore; (iv) the *F Elephant*, a 254,929 dwt ore vessel, registered under the Liberian flag and bearing IMO number 8618841, was arrested by BHP at Port Ningbo, China; (v) the *B Handy*, a 37,000 dwt bulk vessel, registered under the Marshall Islands flag and bearing IMO number 9464950, was arrested by Shanghai Commercial & Savings Bank at the Port of Majuro; (vi) the *C Handy*, a 35,768 dwt bulk vessel, registered under the Marshall Islands flag and bearing IMO number 9471795, was arrested by Shanghai Commercial & Savings Bank had arrested at the Port of Taiwan by the Admiralty Marshall of the High Court of Taiwan; (vii) the *C Ladybug*, a 7,600 dwt car vessel, registered under the Panama flag and bearing IMO number 9445409, was arrested by Cathay United Bank, Active Tanker, SDV, and Alstom at the Port of Antwerp on March 14, 2013; and (viii) the *A Duckling*, a 171,199 dwt bulk vessel, registered under the Panama flag and bearing IMO number 9209910, was arrested by Xiamen Hailong Manning Service Co., Ltd. and Zhejiang Eastern Shipyard Co., Ltd. at the Port of China.

28.     The Arrested Vessels are regularly employed in international trade and call on ports worldwide.  The Plaintiffs' largest assets and sole means for revenue are the Arrested Vessels.  Proceeds from charters of the Arrested Vessels are the Plaintiffs' primary source of

income.  As a result of Defendants' arrests of the Arrested Vessels, the Arrested Vessels are currently laid up in multiple ports, losing income and accruing crew fees, arrest fees and other expenses, rather than generating funds that would inure to the benefit of the Debtors' estates, creditors, and Defendants themselves.  With every day that the Arrested Vessels are under arrest in port, the Plaintiffs are missing charter opportunities for the Arrested Vessels which could be generating funds to pay creditors and fund the reorganization process.

29.     As such, unless this Court immediately orders turnover of the Arrested Vessels to Plaintiffs, the reorganization efforts of the Plaintiffs and their affiliated Debtors will be severely and negatively impacted.  Further, absent relief from this Court, the Plaintiffs believe that the Arrested Vessels will ultimately be sold in inefficient judicial foreclosure proceedings, which will fail to maximize the value of the Arrested Vessels for the benefit of the bankruptcy estates of the debtor Plaintiffs and all creditors.

30.     Unless Defendants are deterred from, and Plaintiffs are compensated for, this conduct, the debtor Plaintiffs' creditors will ultimately pay the price for this injury.  Defendants are in violation of the automatic stay, are injuring the Plaintiffs' goodwill in the maritime industry, and are causing a tremendous loss of income to the Plaintiffs' bankruptcy estates. Plaintiffs seek the assistance of this Court to deter continued and future violations of the automatic stay in this case, to prevent the loss of customers and good will, and to return the Arrested Vessels to Plaintiffs' bankruptcy estates.  Plaintiffs also request that this Court award damages to them for Defendants' wrongdoings.

31.     All conditions precedent to Plaintiffs' claims and causes of action have been performed or have occurred.

#4314197

## V.  CAUSES OF ACTION

### COUNT ONE: ISSUANCE OF A TEMPORARY RESTRAINING ORDER

32.     Plaintiffs incorporate by reference all of the allegations of the foregoing paragraphs as applicable.

33.     Bankruptcy Courts have authority to issue injunctive relief pursuant to § 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7065, which makes Federal Rule of Civil Procedure 65 applicable in adversary proceedings.  *See* 11 U.S.C. § 105; Fed. R. Bankr. P. 7065.  A party is entitled to a preliminary injunction when there is (i) a substantial likelihood of success on the merits; (ii) a substantial threat that the party will suffer irreparable injury if the injunction is not issued; (iii) the threatened injury to the party outweighs any damage the injunction might cause the opponent; and (iv) the injunction will not disserve the public interest.  *Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC*, 710 F.3d 579, 582 (5th Cir. 2013); *Pipkin v. JVM Operating, LC*, 197 B.R. 47, 55 (E.D. Tex. 1996).  Pursuant to § 105 and Federal Rule of Bankruptcy Procedure 7065, Plaintiffs seek a temporary restraining order, without notice or hearing, preventing Defendants from holding possession of the Arrested Vessels in violation of the Bankruptcy Code.   Without such relief, Plaintiffs will suffer immediate and irreparable injury, loss, or damage before the Defendants can be heard in opposition.  *See* Fed. R. Civ. P. 65, made applicable to this proceeding through Fed. R. Bankr. P. 7065.

*A. Likelihood of Success on the Merits*

34.     The movant must present a *prima face* case of its claim to demonstrate its likelihood of success on the merits, but the movant does not need to prove its success as a matter of law.  *Daniels Health Sciences*, 710 F.3d at 582.  Plaintiffs can show a likelihood of success on the merits because the Arrested Vessels are property of their bankruptcy estates and Defendants

-10-

have not obtained Court approval for relief from the automatic stay.  As such, the Defendants'
refusal to turn over the Arrested Vessels and their exercise of dominion and control over the
Arrested Vessels is in clear violation of the automatic stay.

35.     Property of the bankruptcy estate is "comprised of all the following property,
wherever located: …all legal or equitable interests of the debtor in property as of the
commencement of the case."  11 U.S.C. § 541(a)(1); *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198,
204 (1983).  The scope of section 541(a)(1) is broad.  *U.S. v. Whiting Pools, Inc.*, 462 U.S. at
205 (citing H.R. Rep. No. 95-595, p. 367 (1977)).  Although the Plaintiffs do not have
possession of the Arrested Vessels, they are still the owners of the Arrested Vessels and have a
legal and/or equitable interest in the Arrested Vessels.  Therefore, the Vessels are property of the
Plaintiffs' bankruptcy estates despite the fact that they have been arrested by the Defendants.

36.     The filing of a bankruptcy petition operates to stay any act to obtain possession of
property of or from the estate, or to exercise control over property of the estate.  11 U.S.C.
§ 362(a)(3).  The Defendants did not seek relief from the automatic stay, yet the Defendants
continue to exercise control over the Arrested Vessels in clear violation of § 362(a)(3) of the
Bankruptcy Code.  Plaintiffs have informed Defendants of their pending bankruptcy cases and
have sent a demand letter to the Defendants requesting the turnover of the Arrested Vessels as
property of the bankruptcy estates.  Despite these attempts, Defendants refuse to turn over the
Arrested Vessels to the Plaintiffs.  Defendants are not only in violation of the automatic stay but
continue to knowingly and willfully violate the automatic stay to the detriment of the Plaintiffs'
bankruptcy estates and, ultimately, to the detriment of the Plaintiffs' creditors.

#4314197

*B. Irreparable Injury*

37.     A party is likely to suffer irreparable harm where there is no adequate remedy at law for the harm.  *Daniels Health Sciences*, 710 F.3d at 585.  For example, "injury to a party's operations, reputation, and goodwill" is irreparable because monetary remedies cannot undue such injury.  *Pipkin*, 197 B.R. at 56.  Further, financial harm rises to the level of irreparable harm "where the potential economic loss is so great as to threaten the existence of the movant's business."  *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989).   Moreover, injury resulting from violation of the automatic stay is irreparable.  *See United States Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus., Inc.)*, 68 B.R. 690, 694 (Bankr. S.D.N.Y. 1986) (issuing preliminary injunction ordering defendant to release seized vessels of the debtor).

38.     Plaintiffs' businesses rely on the operation of their vessels.  The seizure of the Arrested Vessels prevents the Plaintiffs from operating in the ordinary course of business.  Plaintiffs are unable to generate revenue because the Arrested Vessels are prohibited from obtaining and fulfilling charter obligations.  The Plaintiffs' sole revenue generating assets are the Arrested Vessels; without them, the Plaintiffs' businesses will not be able to exist.  Furthermore, as the Arrested Vessels sit in port unable to work, they are accruing additional liabilities, such as crew wages, crew provisions, bunkers, and costs of *in custodia legis*, among others.  In addition, Defendant's dominion and control over the Arrested Vessels injures Plaintiffs reputation and goodwill by calling into question Plaintiffs' ability to timely deliver cargo and fulfill charter obligations.

#4314197

## C. Balance of Hardships

39.      A balance of the hardships weighs in the favor of Plaintiffs.  The issuance of a temporary injunction merely protects estate property and the Plaintiffs' reorganization process. *See, In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 189 (Bankr. N.D. Tex. 2012). Without this preliminary injunction restraining Defendants from holding the Arrested Vessels in violation of the Bankruptcy Code, Plaintiffs will be unable to effectively reorganize and their businesses will be significantly harmed because they cannot generate revenues without the Arrested Vessels.  On the other hand, Defendants will not be harmed by a preliminary injunction. Defendants' claims and any rights they might have against the Plaintiffs will be preserved through the bankruptcy process.  Likewise, as the Arrested Vessels are put back to work, they will generate significant income that will benefit both the Plaintiffs and Defendants.

## D. Public Interest

40.      Last, granting the Plaintiffs a temporary restraining order serves the public interest.  Courts generally find that injunctions that facilitate reorganizations serve the public interest.  *In re FiberTower*, 482 B.R. at 189.  "Chapter 11 expresses the public interest of preserving going-concern values of businesses, protecting jobs, ensuring the equal treatment of any payment of creditors, and if possible saving something for the equity holders."  *Id*.  Where a debtor's chance for successful reorganization is jeopardized without the requested injunctive relief, such relief serves the public interest.  *Id*. at 190.  Here, Plaintiffs' chance for successful reorganization will be greatly jeopardized if Defendants continue to control and possess the Arrested Vessels.  Further, Defendants' arrest of the Arrested Vessels goes against the underling purpose of the Bankruptcy Code, which attempts to ensure the equal treatment of creditors.

*E. Immediate Relief is Necessary*

41.     Plaintiffs seek a temporary restraining order, without notice or hearing, preventing Defendants from holding possession of the Arrested Vessels in violation of the Bankruptcy Code.  Without such immediate relief, Plaintiffs will suffer immediate and irreparable injury and loss, before the Defendants can be heard in opposition.  Every day in which the Arrested Vessels are held at port, the Plaintiffs and their bankruptcy estates are losing funds.  Plaintiffs cannot generate funds or run their businesses without control over their Arrested Vessels.  Further, upon information and belief, some, if not all, of the Defendants intend to sell the Arrested Vessels in the immediate future.  There is no guarantee that Defendants will sell the Arrested Vessels for the highest and best price and any sale of the Arrested Vessels will be to the determent of the Plaintiffs' bankruptcy estates and the Plaintiffs' creditors.  Therefore, Plaintiffs are irreparably harmed by Defendants' continuing possession of and refusal to turn over the Arrested Vessels and Plaintiffs require an immediate temporary restraining order before Defendants can be heard in opposition.

**COUNT TWO: ISSUANCE OF A PERMANENT INJUNCTION**

42.     Plaintiffs incorporate by reference all of the allegations of the foregoing paragraphs as applicable.

*A. Plaintiffs Meet the Requirements for Permanent Injunction*

43.     A plaintiff seeking a permanent injunction must demonstrate that: (i) it has suffered an irreparable injury; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the hardships between the parties, a remedy in equity is warranted; and (4) the public interest will not be disserved by a permanent injunction.  *See ebay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

#4314197

44.     As discussed *supra*, Plaintiffs' businesses rely on the operation of the Arrested Vessels.   The seizure of the Arrested Vessels prevents the Plaintiffs from operating their businesses and bringing in revenues.   The Plaintiffs' reputation and goodwill will continue to deteriorate as the Plaintiffs continue to forego charter opportunities as a result of Defendants' possession of the Arrested Vessels in violation of the Bankruptcy Code.   Monetary damages are inadequate to remedy the injury to Plaintiffs because the potential economic loss threatens the existence of the Plaintiffs' businesses.   *See Atwood Turnkey Drilling*, 875 F.2d at 1179.   While Plaintiffs will be substantially harmed without a permanent injunction, the issuance of the injunction will protect estate property and the Plaintiffs' reorganization process, resulting in little to no harm to Defendants.   Last, the public interest will not be disserved by the issuance of a permanent injunction because an injunction will preserve going-concern values of the businesses and ensure the equal treatment of any payment of creditors.   *See In re FiberTower*, 482 B.R. at 189.   Therefore, Plaintiffs satisfy these four factors and the Court should issue a permanent injunction restraining Defendants from holding possession of the Arrested Vessels in violation of the Bankruptcy Code.

B. *Actual Damages, Attorneys' Fees and Costs*

45.     The Court may award damages for violation of the automatic stay to a corporate debtor pursuant to its equitable powers and in enforcement of the Court's civil contempt power under § 105 of the Bankruptcy Code.   *See* 11 U.S.C. § 105; *In re San Angelo Pro Hockey Club, Inc.¸* 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003); *In re MD Promenade, Inc.*, 2009 WL 80203, *12 (Bankr. N.D. Tex. Jan. 8, 2009).   The automatic stay is a self-executing injunction and constitutes an order issuing from the bankruptcy court for contempt purposes.   *San Angelo Pro Hockey Club*, 292 B.R. at 124.   A sanction of civil contempt serves to insure compliance with the

-15-

automatic stay and to compensate the bankruptcy estate for losses or damages sustained because of a stay violation. *San Angelo Pro Hockey Club*, 292 B.R. at 124; *MD Promenade*, 2009 WL 80203 at *12. A violation of the automatic stay is willful, and thus justifies sanctions under § 105, where the defendants committed intentional acts with knowledge of the bankruptcy petition. *MD Promenade*, 2009 WL 80203 at *13. Specific intent to violate the stay is not required. *San Angelo Pro Hockey Club*, 292 B.R. at 125.

46.     Defendants are aware of the Plaintiffs' bankruptcy petitions. Plaintiffs sent Defendants demand letters and notices, informing Defendants of the bankruptcy cases and the fact that Defendants' control of the Arrested Vessels is a violation of the Bankruptcy Code's automatic stay. Regardless of these attempts to recover the Arrested Vessels and Defendants' knowledge of the bankruptcy proceedings, Defendants continue to exercise control over the Arrested Vessels in violation of the automatic stay. Therefore, Defendants continue to engage in a willful violation of the Bankruptcy Court's court-ordered automatic stay injunction, and Plaintiffs are entitled to their actual damages, attorneys' fees, and costs.

47.     As such, Plaintiffs request the Court grant them their actual damages, which are unliquidated and continue to increase with each day that the Arrested Vessels are deprived of contractual opportunities because of the Defendants' willful violation of the stay. In addition, Plaintiffs request that the court award them their reasonable attorneys' fees and costs incurred in bringing this adversary proceeding to enforce the provisions of the Bankruptcy Code.

**COUNT THREE: TURNOVER OF PROPERTY OF THE ESTATE TO PLAINTIFFS**

48.     Plaintiffs incorporate by reference all of the allegations of the foregoing paragraphs as applicable.

#4314197

A. *Turnover Required Under Section 542(a)*

49.     Plaintiffs seek the turnover of the Arrested Vessels pursuant to § 542(a) of the Bankruptcy Code.  Section 542 of the Bankruptcy Code requires any entity in possession of property that a debtor may use, sell, or lease under section 363 to deliver such property to the debtor.  11 U.S.C. § 542(a).

50.     The Arrested Vessels are estate property pursuant to § 541 of the Bankruptcy Code.  Property of the bankruptcy estate is "comprised of all the following property, wherever located:…all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1); *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983).  The scope of section 541(a)(1) is broad and is intended to include any property made available to the estate by other provisions of the Bankruptcy Code, even property "in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced."  *U.S. v. Whiting Pools, Inc.*, 462 U.S. at 205 (citing H.R. Rep. No. 95-595, p. 367 (1977)).  Even where a creditor repossesses property prior to the petition date, the debtor has a continuing equitable interest in the property.  *In re Weber*, --- F.3d ----, 2013 WL 1891371, *3 (2d Cir. May 8, 2013).  Section 541 gathers all of the debtor's interests in property, wherever located and by whomever held.  *Id.*; 11 U.S.C. § 541(a).  The Plaintiffs have equitable interests in the Arrested Vessels.  The Defendants' arrest of the Arrested Vessels does not eliminate the Plaintiffs' interest in them.  As such, as of the Petition Date, the Arrested Vessels automatically became property of the Plaintiffs' bankruptcy estates.

51.     Section 542 of the Bankruptcy Code works in connection with section 541 by requiring that any "entity in possession, custody, or control of property of the estate *shall deliver* that property to the trustee."   11 U.S.C. § 542(a) (emphasis added); *In re Weber*, 2013 WL

-17-

1891371 at *2.  In a chapter 11 bankruptcy, a debtor in possession has all rights and powers, and shall perform all the functions and duties of a trustee.  11 U.S.C. § 1107(a).  Therefore, the delivery obligation of section 542(a) contemplates the debtor in possession as the recipient of property of the estate.  *See* 11 U.S.C. §§ 1107(a), 542(a); *In re Weber*, 2013 WL 1891371 at *2. Therefore, pursuant to the Bankruptcy Code, all property of the Plaintiffs that the Plaintiffs could use, sell or lease under § 363 of the Bankruptcy Code, shall be delivered to Plaintiffs for administration through the bankruptcy estates and provisions of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1107(a), 542(a).  The Plaintiffs can use the Arrested Vessels pursuant to § 363.  The Plaintiffs are regularly engaged in the business of international shipping and not only can, but do, use the Arrested Vessels for such purposes.  Therefore, the Plaintiffs not only can, but seek to, use the Arrested Vessels in the ordinary course of business, without notice or hearing, pursuant to § 363.  *See* 11 U.S.C. § 363(b)(1).  Further, section 542 is self-executing; Plaintiffs were not obligated to initiate an additional proceeding or obtain a court order to compel turnover, Defendants were required to deliver the Arrested Vessels to Plaintiffs "without condition or any further action."  *In re Weber*, 2013 WL    at *6.  "The primary goal of reorganization bankruptcy is to group *all* of the debtor's property together in his estate such that he may rehabilitate his credit and pay off his debts…[a]n asset actively used by a debtor serves a greater purpose to both the debtor and his creditors than an asset sitting idle on a creditor's lot."  *Id*. at *8 (quoting *Thompson v. Gen. Motors Acceptance Corp.*, 566 F.3d 699, 702 (7th Cir. 2009)).

52.     Defendants are in control of the Plaintiffs' Arrested Vessels.  Plaintiffs have sent demand letters and notices that Defendants must return the Arrested Vessels to Plaintiffs pursuant to the Bankruptcy Code and their control over the Arrested Vessels is in violation of the automatic stay.  Under the bankruptcy code, Defendants must deliver the Arrested Vessels to the

-18-

Plaintiffs so that the Plaintiffs can use their Arrested Vessels to rehabilitate their credit and pay off their debts through the bankruptcy process.  Defendants refuse to return the Arrested Vessels to the Plaintiffs and the Plaintiffs' bankruptcy estates, therefore, the Court should compel turnover of the Vessels.

*B. In the Alternative, Turnover is Required Under Section 543(b)*

53.     While Plaintiffs do not believe the Defendants are custodians of the Arrested Vessels, if the Court finds the Defendants are indeed custodians, section 543(b) of the Bankruptcy Code requires Defendants to deliver the Arrested Vessels to the Plaintiffs nevertheless.  Section 543 requires custodians to deliver any property of the debtor that is in the custodian's possession to the debtor as of the date such custodian becomes aware of the bankruptcy case.  11 U.S.C. § 543(b).  Plaintiffs have notified Defendants of their bankruptcy cases and have demanded the Defendants deliver the Arrested Vessels to the Plaintiffs. Therefore, the Defendants are aware of the bankruptcy case and, even if the Court determines they are custodians, the Bankruptcy Code requires the Defendants deliver the Arrested Vessels to the Plaintiffs.

54.     Accordingly, Plaintiffs ask that the Court order immediate turnover of the Arrested Vessels under Bankruptcy Code §§ 542(a) and/or 543(b).

## VI.  REQUESTED RELIEF

WHEREFORE, in accordance with the pleadings set forth herein, Plaintiffs respectfully request the Court:

(a)     issue a temporary restraining order pursuant to § 362(a)(3), restraining Defendants from obtaining possession of or exercising control over the Arrested Vessels or other property of the estate;

(b)     issue a permanent injunction restraining Defendants from obtaining possession of property of the estate or exercising control over the Arrested Vessels or other property of the estate without Court order;

-19-

(c)     declare that Defendants have violated and continue to violate the automatic stay by exercising control over the Arrested Vessels and/or other property of the estate;

(d)     direct Defendants to immediately turn the Arrested Vessels over to Plaintiffs;

(e)     determine and award Plaintiffs their actual damages for Defendants' violation of the automatic stay and any other damages as may be available by law or equity;

(f)     award Plaintiffs their reasonable and necessary attorneys' fees;

(g)     award Plaintiffs their costs of suit; and

(h)     order such other and further relief to which the Court deems just, equitable, and proper.

Respectfully submitted this 22nd day of June 2013.

BRACEWELL & GIULIANI LLP

By:  */s/ William A. (Trey) Wood III*
     William A. (Trey) Wood III
     Texas Bar No. 21916050
     Trey.Wood@bgllp.com
     Marcy E. Kurtz
     Texas Bar No. 11768600
     Marcy.Kurtz@bgllp.com
     Jason G. Cohen
     Texas Bar No. 24050435
     Jason.Cohen@bgllp.com
     711 Louisiana, Suite 2300
     Houston, Texas 77002
     Telephone: (713) 223-2300
     Facsimile:  (713) 221-1212

          -and-

     Evan D. Flaschen
     (*Pro hac vice* admission requested)
     Evan.Flaschen@bgllp.com
     Goodwin Square
     225 Asylum Street, Suite 2600
     Hartford, CT 06103
     Telephone: (860) 947-9000
     Facsimile:  (860) 246-3201

-20-

#4314197

-and-

Robert G. Burns
(*Pro hac vice* admission requested)
Robert.Burns@bgllp.com
1251 Avenue of Americas, 49th Floor
New York, New York  10020-1104
Telephone: (212) 508-6100
Facsimile:  (800) 404-3970


Proposed Counsel for the Debtors
and Debtors in Possession

-21-

## <u>CERTIFICATE OF NOTICE OF APPLICATION FOR TRO</u>

The undersigned certifies that on June 21, 2013, a true and correct copy of this document was served on the parties listed below by electronic mail.  Efforts were made to give notice, but notice should not be required pursuant to Fed. R. Civ. P. 65, made applicable to this proceeding through Fed. R. Bankr. P. 7065, because Plaintiffs will suffer immediate irreparable harm before Defendants can present their case.

*/s/ Marcy E. Kurtz*

Active Tankers Shipmanagement S.A.
mdodds@reedsmith.com (counsel for Active Tankers)

Alstom
investor.relations@chq.alstom.com

BHP Billiton Marketing A.G.
niels.wage@bhpbilliton.com
tim.baker@bhpbilliton.com
nick.austin@clydeco.com (counsel for BHP Billiton)

Cathay United Bank
tzuming@cathaybk.com.tw

Chang Hwa Bank, Ltd.
chbny@chbnyc.com
changhwa@chbla.com

Hua Nan Commercial Bank, Ltd.
huananbank@hncbny.com

KPI Bridge Oil Limited
fha@bunker-holding.com

Mega International Commercial Bank Co., Ltd.
priscilla@megabank.com.tw
Cheng-Hsien@megabank.com.tw
shihlan@megabank.com.tw

#4314197

SDV Geis GmbH
martin.weber@sdv-geis.com

Shanghai Commercial & Savings Bank
yeh1350@scsb.com.tw
pshsieh@scsb.com.tw
Christian.hernandez@isolas.gi (counsel for Shanghai Bank)


Xiamen Hailong Manning Service Co., Ltd.
labor2@xmhailong.com

Zhejiang Eastern Shipyard Co., Ltd.
sales@zescoshipyard.com

#4314197